**<u>NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000054
16-MAR-2023
07:46 AM
Dkt. 99 SO**

NO. CAAP-22-0000054

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF A.O.

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CASE NO.  FC-S 18-0054)

<u>SUMMARY DISPOSITION ORDER</u>
(By:  Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Respondent-Appellant Father (**Father**) appeals from the January 24, 2022 Order Terminating Parental Rights (**TPR Order**)[1] entered by the Family Court of the Third Circuit (**Family Court**).[2] On appeal, Father appears to raise three points of error:[3]

---

[1]    The Family Court entered its Findings of Fact and Conclusions of Law (**FOFs/COLs**) on October 7, 2022 after the appeal was filed.  The parties were allowed to address the FOFs/COLs in supplemental briefing.

[2]    The Honorable Jeffery W. Ng presided.

[3]    Father's "points of error" section of his abbreviated opening brief contains the first two points of error; however, the "argument" section appears to raise a third argument which we construe as a third point of error, in the interest of addressing cases on their merits.  See Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (noting policy of addressing cases on the merits, where possible, despite noncompliance with appellate rule).

(1) the Family Court lacked jurisdiction to hear Petitioner-Appellee Department of Human Services's (**DHS**) motion to terminate parental rights (**TPR Motion**) because DHS filed the TPR Motion beyond the time limitation period set forth in Hawaii Revised Statutes (**HRS**) § 587A-33(i) (2018);[4] (2) the Family Court violated HRS § 587A-33(a)(1) and (a)(2) (2018)[5] because it failed to require DHS to prove, by clear and convincing evidence, that Father's family was unable to provide AO with a safe family home under the factors set forth in HRS § 587A-7; and (3) the Family Court violated HRS § 587A-33(a)(3)(A) (2018)[6] by failing to require DHS to prove, by clear and convincing evidence, that

---

[4]    HRS § 587A-33(i) provides: **"Absent compelling reasons**, if the child has been in foster care under the department's responsibility for an aggregate of fifteen out of the **most recent** twenty-two months from the date of entry into foster care, the department shall file a motion to terminate parental rights."  (Emphases added).

[5]    HRS § 587A-33(a) provides, in relevant part:

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> > (1) A **child's parent** whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan; [and]
> >
> > (2) It is not reasonably foreseeable that the **child's parent** whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care[.]

(Emphases added).

[6]    HRS § 587A-33(a)(3)(A) provides, in relevant part:

> (3) The proposed permanent plan is in the best interests of the child. In reaching this determination, the court shall:
>
> > (A) Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home . . . .

2

AO's resource caregivers (**RCGs**) were responsible and competent substitute parents. In support of his second point of error, Father objects to FOFs 14, 51, 82-83, 92-94, 105, and COLs 10-13.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Father's points of error as follows, and affirm.

The pertinent background is as follows. On August 15, 2018, police took AO into protective custody due to SO's (**Mother**) incarceration and Father's whereabouts being unknown. DHS placed AO in the care of RCGs. AO was seven years old when AO entered into foster care on October 14, 2018.

On August 20, 2018, DHS filed a petition for temporary foster custody of AO (**Petition**) and issued a service plan with recommended services for Mother and Father to complete to resolve DHS's safety concerns.

Mother intermittently participated in Family Court proceedings and DHS's service plan, but was ultimately defaulted for failure to appear. Mother did not appeal from the TPR Order.

Father resided in Mexico throughout the Family Court proceedings. On December 6, 2019, Father, for the first time, appeared before the Family Court via telephone from Mexico. Thereafter, Father participated in Family Court proceedings from Mexico and sought placement of AO with his family in California.

Contemporaneously, Father's family expressed interest in becoming resource caregivers for AO. Beginning in December 2018, DHS allowed, and Father's family participated in, "EPIC Ohana Conferences" regarding AO. DHS also facilitated weekly phone calls between AO and Father's family, in-person visits, and travel for AO to California to meet Father's family.

3

Throughout the Family Court proceedings, DHS explored permanent placement of AO with Father's family.

On July 7, 2020, DHS filed the TPR Motion to terminate Mother's and Father's parental rights due to Mother's and Father's inability to provide AO with a safe family home at that time or within a reasonable period of time. DHS submitted a June 16, 2020 permanent plan contemplating adoption to an appropriate caregiver (**Permanent Plan**).

Rather than setting a hearing on the TPR Motion, the Family Court ordered DHS to look into placement of AO with Father's family. As a result, DHS continued to facilitate communication between AO and Father's family, and completed an out-of-state home assessment for Father's family. On January 8, 2021, the Family Court, while recognizing that it remained open to considering Father's family as a permanent placement option for AO, scheduled trial on the TPR Motion.

The Family Court held trial on the TPR Motion on August 27, October 29, and December 10, 2021, and January 14, 2022.

Father attended trial via telephone from Mexico. During trial, Father testified, in relevant part, that he did not know when he would be able to return to the United States, he was unable to complete the requirements of his service plan due to his location in Mexico and COVID-19, and he did not want AO to be placed with him in Mexico, but wanted AO to be placed with his family in California.

The Family Court granted the TPR Motion, and Father timely appealed.

**(1)** Father contends that the Family Court lacked jurisdiction to hear the TPR Motion because DHS filed the TPR Motion beyond the time limitation period set forth in

HRS § 587A-33(i).  Specifically, Father argues that HRS § 587A-33(i) required DHS to file a motion to terminate parental rights no later than fifteen months after a child's entry into foster care, or no later than twenty-two months after a child's entry into foster care if DHS provided compelling reasons showing why the extension was necessary.  Absent such, DHS was precluded from seeking to terminate parental rights.  Father's point of error lacks merit.

We review the Family Court's subject matter jurisdiction de novo.  In re Doe, 96 Hawaiʻi 272, 283, 30 P.3d 878, 889 (2001) (citation omitted).  We also review the Family Court's interpretation of a statute de novo.  In re Doe, 90 Hawaiʻi 246, 250, 978 P.2d 684, 688 (1999) (citation omitted).

HRS § 587A-33(i) is not a jurisdictional statute.  The Family Court's jurisdiction is set forth in HRS § 571-11(9) (Supp. 2021) and HRS § 587A-5.  HRS § 571-11(9) provides in relevant part, "Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings: . . . (9) For the protection of any child under chapter 587A[.]"  HRS § 571-11(9).  HRS § 587A-5 (2018) provides:

> Pursuant to section 571-11(9), the court shall have exclusive original jurisdiction:
>
> > (1) In a child protective proceeding concerning any child who is or was found within the State at the time specified facts and circumstances occurred, are discovered, or are reported to the department. These facts and circumstances constitute the basis for the court's finding that the child's physical or psychological health or welfare is subject to imminent harm, has been harmed, or is subject to threatened harm by the acts or omissions of the child's family; and
>
> > (2) In any prior child protective proceeding under chapter 587, the former Child Protective Act.

Here, the Petition and TPR Motion are proceedings for the protection of AO under HRS § 571-11(9) and HRS § 587A-5. As such, the Family Court had jurisdiction over the proceedings.

Father's interpretation of HRS § 587A-33(i) is incorrect.

> When construing a statute, the starting point is the language of the statute itself. Courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute. Words are given their common meaning unless some wording in the statute requires a different interpretation.

In re Doe, 90 Hawaiʻi at 250, 978 P.2d at 688 (citations, brackets, and internal quotation marks omitted). The plain language of HRS § 587A-33(i): (1) indicates that the time for DHS to file a motion to terminate parental rights is qualified in its entirety by compelling reasons, and (2) contemplates the possibility of a child remaining in foster care for more than twenty-two months by narrowing the statutory time frame to the "most recent" twenty-two months. See HRS § 587A-33(i). As such, any purported untimeliness and a child's placement in foster care for more than twenty-two months does not, standing alone, preclude DHS from filing a motion to terminate parental rights.

Here, the record also reflects the Family Court set forth compelling reasons justifying DHS's filing of the TPR Motion beyond the general time frame set forth in HRS § 587A-33(i). At the conclusion of trial on January 14, 2022, the Family Court found that "compelling reasons exist[ed] to delay the filing" of the TPR Motion because, among other things, Father "did not make an appearance in this case until December 6, 2019" and that any "alleged delay" was to "specifically give

6

[Father] additional time to formally appear, be appointed a lawyer and potentially begin a service plan." The Family Court concluded that any "alleged delay of filing the Motion for Termination of Parental Right was done to potentially benefit [Father][.]" Father makes no argument contesting these "compelling reasons." See HRS § 587A-33(i).

**(2)** Father contends that the Family Court violated HRS § 587A-33(a)(1) and (a)(2) because it failed to require DHS to prove, by clear and convincing evidence, that Father's family in California was unable to provide AO with a "safe family home," as defined under HRS § 587A-7, prior to terminating Father's parental rights. In support, Father objects to FOFs 14, 51, 82-83, 92-94, 105, and COLs 10-13. Father's argument is without merit.

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." In re Doe, 95 Hawaiʻi 183, 189, 20 P.3d 616, 622 (2001) (citations and internal quotation marks omitted). This court — interpreting HRS § 587-73 (a)(1) and (a)(2)[7] — explained:

---

[7] HRS § 587-73 (a)(1) and (a)(2) (2009) (repealed 2010) provided:

(a) At the permanent plan hearing, the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587-25, including but not limited to the report or reports submitted pursuant to section 587-40, and determine whether there exists clear and convincing evidence that:

(1) The child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 are not presently willing and able to provide the child with a safe family home, even with the assistance of a service plan;

(2) It is not reasonably foreseeable that the child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 will become willing and able to provide the child with a safe

> [W]hen **the parent** is not presently willing and able to
> provide the child(ren) with a safe family home and it is
> not reasonably foreseeable that the parent will become
> willing and able to provide the child(ren) with a safe
> family home within a reasonable period of time which shall
> not exceed two years from the date upon which the
> child(ren) were first placed under foster custody by the
> court, **the fact that the parent has a relative who is
> presently willing and able to provide the child(ren) with a
> safe family home until the parent's eventual release from
> confinement is not a basis for denying a motion by DHS for
> termination of the parent's parental rights.**

In re T Children, 113 Hawaiʻi 492, 499, 155 P.3d 675, 682 (App.
2007) (emphases added).[8]

More particularly, under HRS § 587A-33(a)(1) and
(a)(2), the Family Court must determine if there is clear and
convincing evidence that the **"child's parent** whose rights are
subject to termination" is not presently willing and able to
provide the child with a "safe family home," and that it is not
reasonably foreseeable that such parent will become willing and
able to provide child with a "safe family home" within a
reasonable period of time, not to exceed two years from child's
entry into foster care. (Emphasis added). In this regard, HRS
§ 587A-4 defines "parent" as:

> any legal parent of a child; the birth mother, unless the
> child has been legally adopted; the adjudicated, presumed,
> or concerned birth father of the child as provided
> in section 578-2(a)(5), unless the child has been legally
> adopted; or the legal guardians or any other legal
> custodians of the child.

---

> family home, even with the assistance of a service plan,
> within a reasonable period of time which shall not exceed
> two years from the date upon which the child was first
> placed under foster custody by the court[.]

[8]      In 2010, the Legislature repealed and replaced HRS Chapter 587
with HRS Chapter 587A. 2010 Haw. Sess. Laws Act 135. The provisions of HRS
§ 587-73(a)(1) and (a)(2) were re-codified as HRS § 587A-33 (a)(1) and
(a)(3), but remained substantively intact. Thus, the analysis in In re T
Children applies to HRS § 587A-33(a)(1) and (a)(2).

"Family home" is defined as "the home of the child's legal custodian." HRS § 587A-4. Further, "[s]afe family home factors" is defined as "a list of criteria that must be considered in determining whether a parent is able to provide a safe family home as set out herein in section 587A-7." Id.

Given the requirements under HRS § 587A-33(a)(1) and (a)(2), and the relevant statutory definitions, we conclude that Father's argument -- that his parental rights should not have been terminated because his family in California could provide a safe family home for the child -- is without merit. The Family Court found, and it is not contested, that Father was non-existent in AO's life when AO was placed with DHS, in an initial interview AO did not know his Father's name or whereabouts, Father resides in Mexico, and Father testified he did not want AO to live with him in Mexico but wanted AO to live with Father's family in California.

Here, because Father was unable to provide AO with a safe family home at the time, or within a reasonably foreseeable period of time, Father's family's willingness and ability to provide AO with a safe family home was not a basis to deny the TPR Motion. See id. Thus, the Family Court's termination of Father's parental rights based upon Father's inability to provide AO with a safe family home, irrespective of Father's family's ability to provide AO with a safe family home, did not constitute an abuse of discretion, and we do not address whether Father's family met the safe family home factors.[9]

---

[9] The Family Court's TPR Order also ordered the June 16, 2020 Permanent Plan, which DHS recognizes is for AO's adoption to an appropriate caregiver. In its answering brief, DHS notes that an October 25, 2021 Safe Family Home Report stated that DHS could continue to assess placement with relatives for AO, even after permanent custody is attained. Further, AO's GAL noted in its answering brief that Father's family is being considered as a placement option, and in its supplemental answering brief noted that appropriate placement for AO is a separate issue from terminating Father's parental rights which could be addressed through a placement hearing pursuant to HRS § 587A-31.

Father's objections to various FOFs and COLs are also without merit. As a threshold matter, Father fails to provide a concise legal argument about each contested FOF and COL. See Rules Expediting Child Protective Appeals Rule 11(a)(4). Nonetheless, our review of the record shows substantial evidence to support FOFs 14, 51, 82-83, 92-94, and 105, and COLs 12-13; they are not clearly erroneous and stand on appeal. See In re Doe, 95 Hawaiʻi at 190, 20 P.3d at 623 (requiring substantial evidence to support FOFs and mixed FOFs/COLs on appellate review) (citation omitted). COLs 10 and 11[10] accurately summarize HRS § 587A-7 and -33(a), and thus stand on appeal. See id. (explaining that "COLs are reviewed on appeal *de novo*, under the right/wrong standard") (citations omitted).

**(3)** Father contends that the Family Court erred by failing to find, by clear and convincing evidence, that RCGs were responsible and competent parents. Father points to no legal authority, and we find none, in support of Father's interpretation of HRS § 587A-33(a)(3)(A). In contrast, the plain language of HRS § 587A-33(a)(3) requires the Family Court to determine whether there exists clear and convincing evidence

---

[10]    COLs 10 and 11 provide:

10.    In determining whether the criteria as set forth in HRS § 587A-33 (a) have been established by clear and convincing evidence, the court must consider fully all prior and current information related to the safe family home factors, as set forth in HRS § 587A-7, as to each child in the family individually.

11.    A parent's participation in services is only one criterion of the safe family home factors, as stated in HRS § 587A-7, in determining the parent's ability to provide a safe family home. Not one criterion in the safe family home guidelines, standing alone, is dispositive of whether a parent can provide a safe family home. In re Doe, 95 Hawaiʻi at 183, 20 P.3d at 616 (2001). The parent must be able to demonstrate the ability to provide a safe family home for the child(ren). Id. HRS § 587A-7(a).

that the proposed permanent plan is in the best interests of a child.  See HRS § 587A-33(a)(3).  Here, the Family Court determined that the Permanent Plan was in AO's best interest, and Father does not contest this determination.  As such, Father's third point of error is without merit.

For the reasons discussed above, the January 24, 2022 Order Terminating Parental Rights entered by the Family Court of the Third Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, March 16, 2023.

On the briefs:

Ted H.S. Hong,
for Respondent-Appellant
Father.

Lance S. Kobashigawa,
Julio C. Herrera,
Deputy Attorneys General
for Petitioner-Appellee
Department of Human Services.

Laura J. Knudsen,
The Children's Law Project of
Hawaiʻi
Guardian *ad litem*

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge